IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| TYREE LAWSON | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | No. 20-4568 |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |

## MEMORANDUM

**Chief Judge Juan R. Sánchez**                                   **November 21, 2022**

Plaintiff Tyree Lawson brings this civil rights suit against three Philadelphia Police Department employees and the City of Philadelphia, alleging he was wrongfully convicted of a 2006 shooting in violation of his constitutional rights. Defendants have filed a partial Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendants' Motion will be granted in part and denied in part.

**FACTS**

On July 11, 2006, a bullet shot through the door of 3929 Mount Vernon Street in Philadelphia, grazing the head of resident Rashan Brown. Second Amended Complaint ("SAC") ¶¶ 28-30, ECF No. 28. Philadelphia Police Department ("PPD") Officers James Mostiller and Dennis Slobodian were dispatched to the scene. *Id.* ¶ 31. Upon arrival, Mostiller and Slobodian interviewed Rashan[1] and completed a "Complaint or Incident Report." *Id.* ¶¶ 36, 43. Later, at the hospital, Detective Mary Kuchinsky further interviewed Rashan and prepared an "Investigation Interview Record." *Id.* ¶ 36, 39. In both interviews, Rashan reported he had seen Plaintiff Tyree Lawson, together with Tyree's brother Ameen Lawson, outside his house before the shot was

---

[1] As the parties have done, the Court uses first names to refer to those individuals whose surnames are shared by another case participant. *See* SAC ¶ 20 n.1.

fired.[2] *Id.* ¶ 37. Both reports misspell Rashan's name as "Rasahn," including in the signature line. *Id.* ¶¶ 40-44.

Beyond these two reports, the evidence in the PPD file includes a statement from Naimah Freeman, Rashan's sister, who was also home the night of July 11. *Id.* ¶ 20. At the scene, Naimah told Mostiller and Slobodian she had not seen anyone. *Id.* ¶ 47. Mostiller and Slobodian also allegedly received a tip from an unnamed witness who saw a blue SUV, believed to belong to Lawson, speeding away from Mount Vernon Street. *Id.* ¶ 49. Lawson alleges this tip was either fabricated or not investigated, as his blue SUV had been totaled months earlier. *Id.* ¶ 50. Further, Lawson claims he was caring for his ailing sister, Squanetta Lawson, at the time of the shooting, at her house almost eight miles away. *Id.* ¶ 33.

Based on the evidence in the file—the two reports, Naimah's statement, and the tip— Detective Kuchinsky submitted an affidavit for Lawson's arrest on July 19, 2006. *Id.* ¶ 56. On April 17, 2008, Lawson was arrested and charged with attempted murder, aggravated assault, criminal conspiracy to commit murder, and other firearms-related crimes. *Id.* ¶ 57. At Lawson's preliminary hearing, Rashan did not appear, but Naimah testified for the first time that she saw Lawson shoot Rashan, contradicting her statement to police on the night of the shooting. *Id.* ¶ 61.[3] Squanetta also testified, stating that after Naimah learned Lawson had been arrested for the shooting, she contacted Squanetta and threatened implicate him unless Squanetta paid her a "substantial sum of money." *Id.* ¶ 65. In light of Squanetta's testimony, the court ordered the Philadelphia District Attorney's Office ("DAO") to produce phone records of both Squanetta and Naimah. *Id.* ¶ 66. At a hearing on the issue on August 21, 2008, Rashan informed Squanetta that

---

[2] Ameen had recently ended a relationship with Naimah Freeman, Rashan's sister. *Id.* ¶¶ 20-23.
[3] Lawson contends Naimah changed her statement because the PPD "convinced her to testify against Mr. Lawson in exchange for money." *Id.* ¶ 62.

he never implicated Lawson in the shooting, let alone provided any statements to the police. *Id.* ¶ 70. He further indicated he had only come to the August 21 hearing because detectives had threatened to imprison him if he did not attend. *Id.* ¶ 71. The DAO requested a continuance, allegedly to avoid putting Rashan on the stand, and the case was eventually discharged for lack of prosecution. *Id.* ¶¶ 72-74.

The charges against Lawson were refiled on March 23, 2009. *Id.* ¶ 75. At trial on October 9, 2009, the Commonwealth called Rashan, Naimah, and the individual defendants: Officers Mostiller and Slobodian, and Detective Kuchinsky. *Id.* ¶ 81. On the stand, Rashan testified that he did not see Lawson at the scene of the crime. *Id.* ¶ 82. When the prosecution confronted him with Kuchinsky's "Investigation Interview Report," in which he identified Lawson, Rashan denied he ever made the statements therein or signed the form. *Id.* ¶¶ 83-84. Naimah, however, stated she had seen Ameen and Lawson, with a gun in his hand, outside of the residence on the night of July 11, 2006. *Id.* ¶ 85. She further testified, for the first time, that she and her brother Wendell had chased Lawson into the woods after the shooting, but that he had fled in a car. *Id.*

Based on the PPD's written reports memorializing Rashan's alleged statement, Naimah's trial testimony, and the testimony of Mostiller, Slobodian, and Kuchinsky, Lawson was convicted and sentenced to 14-to-28 years' incarceration. *Id.* ¶ 91. His conviction and sentence were affirmed on appeal. *Id.* ¶ 92. Lawson thereafter sought relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), alleging ineffective assistance of counsel and newly-discovered evidence. *Id.* ¶ 95. At a hearing on Lawson's PCRA petition in 2013, Squanetta confirmed Lawson's alibi, and Wendell contradicted Naimah's testimony that they ran after Lawson. *Id.* ¶¶ 98-101. Squanetta also testified she reached out to PPD many times while the charges against Lawson were pending, but neither she nor Wendell were ever interviewed by the police. *Id.* ¶¶ 100, 102. The prosecution

called Naimah, who allegedly changed her statement for a third time. *Id.* ¶ 109. After the PCRA hearing, the Philadelphia Court of Common Pleas vacated Lawson's conviction and ordered a new trial. *Id.* ¶ 110. In response, the DAO *nolle prossed* his charges. *Id.* ¶ 111.[4]

Lawson filed this civil rights suit in the Court of Common Pleas against the three individual Defendants—Officers Mostiller and Slobodian and Detective Kuchinsky—and the City of Philadelphia, alleging he was wrongfully convicted in violation of his constitutional rights. Defendants removed the case to federal court. After two amendments, Lawson's Second Amended Complaint includes six Counts alleging: (I) the individual Defendants violated the Fourth and Fourteenth Amendments' protections against malicious prosecution; (II) the individual Defendants deprived Lawson of his liberty without due process by failing to investigate, fabricating a statement, and bribing a witness; (III) the individual Defendants engaged in a civil rights conspiracy to maliciously prosecute and deprive Lawson of his liberty and right to a fair trial; (IV) all Defendants failed to intervene in continued constitutional violations; (V) the City is liable for the individual Defendants' actions under the doctrine of municipal liability; and (VI) all Defendants violated Pennsylvania state law prohibiting malicious prosecution. Lawson agrees the following claims should be dismissed: failure to investigate under Count II; deprivation of liberty based on unreasonable searches and seizures, false arrest, and false imprisonment under Count III; Count IV in its entirety; and Count IV against the City. *See* Pl.'s Mem. Opp'n Defs.' Mot. Dismiss 5, ECF No. 40-1. Defendants now move to dismiss several of the remaining claims.

**STANDARD OF REVIEW**

---

[4] Lawson was sentenced for another crime in June of 2011. SAC ¶ 94. After the PCRA court vacated his conviction in this case, he filed for PCRA relief in the 2011 case, alleging "the vacatur of the first conviction impacted his sentence for the separate crime." *Id.* ¶ 118. While the PCRA court has not yet decided this issue, Lawson alleges his time served on his wrongful conviction for the 2006 shooting the sentence he should have received on the 2011 crime. *Id.* ¶¶ 120-21.

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "does not need detailed factual allegations" if it contains something "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But the plausibility standard "require[s] a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citation omitted). "A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citing *Iqbal*, 556 U.S. at 678). This Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

**DISCUSSION**

Defendants argue (1) all counts against Mostiller and Slobodian should be dismissed as the Amended Complaint fails to allege they were personally involved in any of the alleged constitutional violations; (2) Count I should be dismissed because the individual Defendants are shielded from liability for malicious prosecution due to qualified immunity; and (3) Count V should be dismissed because the City is not liable for the actions of its employees under the doctrine of *Monell v. Department of Social Services*, 436 U.S. 658 (1978). While Lawson alleges sufficient facts as to Mostiller and Slobodian's involvement in violating his constitutional rights, all three individual Defendants are shielded from liability for malicious prosecution claims under the Fourteenth Amendment due to qualified immunity. Lawson's malicious prosecution claim may proceed against all Defendants to the extent it is grounded in the Fourth Amendment. In addition,

5

the Amended Complaint plausibly alleges the City's custom of allowing unconstitutional practices of the PPD to go unchecked, meeting the requirements for municipal liability under *Monell*. As *Monell* liability cannot be imposed for violations of rights that were not clearly established, however, Lawson's Fourteenth Amendment malicious prosecution claim against the City will also be dismissed. The remaining counts will proceed to discovery.

To plead a violation under § 1983, a plaintiff must demonstrate personal involvement in the alleged wrongs by each defendant. *Rode v. Dellarciprete*, 845 F.2d 1196, 1207 (3d Cir. 1988). Personal involvement can be shown through personal direction or actual knowledge and acquiescence. *Id.* Here, Lawson alleges Mostiller and Slobodian personally directed acts that violated his constitutional rights: fabricating a witness statement, preparing a false police report, and failing to investigate the crime.[5] *See* SAC ¶¶ 34-54.

In the Third Circuit, a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). For example, the complaint in *Boykins v. Ambridge Area School District* was held to satisfy the personal knowledge requirement where it alleged conduct violating civil rights (racially discriminatory activity), time (March 17, 1976), place (King of Prussia), and those responsible (state and bank officials). 621 F.2d 75, 80 (3d Cir. 1980).

The Second Amended Complaint meets these requirements. It includes adequate facts to meet the requirements two, three, and four of personal involvement: time (July 11, 2006), place (Philadelphia), and those responsible (the individual Defendants). As to the alleged conduct, Lawson first claims Mostiller and Slobodian fabricated the report of Rashan's statements. SAC ¶¶

---

[5] The parties concede that failure to investigate is not a constitutional violation, so this allegation will not be addressed. *See* Pl.'s Mem. Opp'n Defs.' Mot. Dismiss 5, ECF 40-1.

34-45. Despite Defendants' arguments to the contrary, the SAC alleges Mostiller and Slobodian did more than just "pass[] Rashan off" to Kuchinsky. Defs.' Mem. Supp. Mot. Dismiss 4, ECF No. 35-1. Lawson alleges Mostiller and Slobodian worked together with Kuchinsky to fabricate Rashan's statements, as evidenced by the fact that their reports included the same misspellings of his name. SAC ¶ 44. This is a sufficient allegation of personal direction and involvement. As for preparing a false witness statement, the SAC alleges Mostiller and Slobodian prepared a police report with information that could not have been true regarding a tip about Lawson's blue SUV. *Id.* ¶ 50. Defendants take issue with Lawson waffling between alleging the defendants fabricated this statement or failed to confirm it, but at this stage in the litigation, all that is required is sufficient facts to "weigh the substantiality of the claim," a standard met in this case. *Boykins*, 621 F.2d at 80. Because the SAC pleads sufficient facts to plausibly allege Mostiller and Slobodian's involvement in the violation of Lawson's rights, their motion to dismiss all counts against them will be denied.

Next, Defendants argue Lawson's Fourteenth Amendment malicious prosecution claim against the individual Defendants must be dismissed because they are protected from liability through the doctrine of qualified immunity. Defs.' Mem. Supp. Mot. Dismiss 6, ECF No. 35. Lawson brings his malicious prosecution claim under both the Fourth and Fourteenth Amendments. The City recognizes the existence of a right to be free from malicious prosecution under the Fourth Amendment but disputes the Fourteenth Amendment claim.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine is not applicable when an official is alleged to have violated a "clearly established right,"

where it is "sufficiently clear that every reasonable person would have understood that what he is doing violates that right." *Riechle v. Howards*, 566 U.S. 658, 664 (2012). In order to assess whether the violation was of such a right, a court must "identify the exact contours of the underlying right" with sufficient specificity. *Berg v. Cty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000).

The Supreme Court has expressly held that there is no substantive due process right to be free from malicious prosecution. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). The existence of the right under the procedural due process clause, however, is far from clear. In *Torres v. McLaughlin*, the Third Circuit found that Supreme Court precedent did not limit malicious prosecution claims to the Fourth Amendment. 163 F.3d 139, 173 (3d Cir. 1998). However, that same year, the court "suggest[ed] that Supreme Court case law leaves only the Fourth Amendment as [a] potential source of malicious prosecution claims." *Gallo v. City of Phila.*, 161 F.3d 217, 222 (3d Cir. 1998). Additionally, the court has since clarified that *Torres* "declin[ed] to decide whether [malicious prosecution claims] could be grounded in procedural due process." *Halsey v. Pfeiffer*, 750 F.3d 273, 290 n.14 (3d Cir. 2014) ("In the future we may be called on to chisel more finely the lines between the two claims . . . but we are spared the burden of doing so now."). Although Lawson argues *Halsey* misconstrued *Torres*, this Court is bound by the more recent precedent. Pl.'s Mem. Opp'n Defs.' Mot. Dismiss 12, ECF No. 40-1.

The state of the law on the issue thus remains murky. Given that the law remains unsettled to this day, a Fourteenth Amendment procedural due process right to be free from malicious prosecution could not have been "clearly established" at the time of the individual Defendants' conduct. *See Thomas v. City of Phila.*, 290 F. Supp. 3d 371, 382 (E.D. Pa. 2018). In so holding, this Court is aligned with the many recent decisions from this District on the issue. *See, e.g.*, *Ogrod*

*v. City of Phila.*, Civ. No. 21-2499, 2022 WL 1093128, at *7 (E.D. Pa. Apr. 12, 2022); *Thorpe v. City of Phila.*, Civ. No. 19-5094, 2020 WL 5217396, at *16 (E.D. Pa. Sept. 1, 2020).

Lawson argues this conclusion is incorrect because the right to be free from malicious prosecution is so commonsensical that it must be clearly established. Pl.'s Mem. Opp'n Defs.' Mot. Dismiss 12, ECF No. 40-1. Dictum in *Halsey* suggests that a right may be clearly established where it is "self-evident," as is the case with the right to be free from fabricated evidence. 750 F.3d at 293. However, this dictum—about a different right, no less—fails to overcome the clear Third Circuit precedent that the right against malicious prosecution under the Fourteenth Amendment is not clearly established even now. *See id.* at 290 n.14.

Lawson further contends it should not matter that the right against malicious prosecution was not clearly established under the Fourteenth Amendment, as the same right was clearly established under the Fourth Amendment, putting the officers on notice that their actions were unconstitutional. Pl.'s Mem. Opp'n Defs.' Mot. Dismiss 14, ECF No. 40-1. The difference between the Fourth and Fourteenth Amendments is "at its core, temporal," as the former only protects an individual until trial, whereas the latter's protection extends through and after trial. *Halsey*, 750 F.3d at 291.

The "conductocused" approach advocated by Lawson was squarely considered and rejected by another court in this district in *Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371 (E.D. Pa. 2018). Instead, the court held that the "rights-centric position," concerned with the source of the right rather than the conduct from which it protects, "is the correct one." *Id.* at 382-83 ("It would be strange to say that right *X* is clearly established just because right *Y* is clearly established and happens to prohibit the same conduct."). In addition, the Supreme Court has emphasized the importance of articulating the precise contours of the underlying right in the realm of qualified

immunity, such that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment . . . must be the guide for analyzing these claims." *Albright*, 510 U.S. at 273. This focus on the specific Amendment cuts against the "conduct-focused" approach. Despite Lawson's urging, this Court sees no reason to stray from the reasoning of *Thomas*. Count I will therefore be dismissed to the extent that it relies on the Fourteenth Amendment but will proceed to discovery on the Fourth Amendment theory.

The parties agree that Lawson's claims for failure to conduct an investigation in Count II and failure to intervene (Count IV) should be dismissed. Under Count II, there remain claims for fabricating evidence and bribery of witnesses in violation of due process. Defendants do not argue qualified immunity protects them from these claims, which, together with Lawson's Fourth Amendment malicious prosecution claim, will proceed to discovery. *See Halsey*, 750 F.3d at 292 (rejecting the "contention that evidence-fabrication claims must be tied to malicious prosecution cases").

Finally, through an omnibus *Monell* claim, Lawson alleges the City should be held liable for the conduct of the PPD. Imposing liability on a municipality requires a "policy or custom that amounts to deliberate indifference to the rights of people with whom the police come into contact." *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004). As *Monell* liability requires a deliberate disregard of rights, it cannot be used to hold municipalities accountable for the violation of rights that were not clearly established. *Thomas*, 290 F. Supp. 3d at 387 ("[A] municipality cannot be deliberately indifferent to a right that is not clearly established."); *see also Ogrod*, 2022 WL 1093128, at *15 ("While the Third Circuit has not yet addressed this same issue, district courts in this District have similarly concluded that where rights are not clearly established,

there can be no municipal liability under *Monell*."). As described above, this Court finds the Fourteenth Amendment right to be free from malicious prosecution was not clearly established at the time of the alleged conduct. For this reason, the City will not be held to answer for this claim.

However, Lawson's malicious prosecution claim sounding in the Fourth Amendment will proceed against the individual defendants, as will his claims of fabricating evidence and bribery of witnesses. As the City does not argue these rights were not clearly established, it may be held liable under *Monell* if the requirements for such liability are met.

A plaintiff can bring a § 1983 claim against a municipality in one of two ways: by alleging that "an unconstitutional policy or custom of the municipality led to his or her injuries," or that the injuries were "caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (internal quotation marks and citation omitted). These are distinct theories of relief, although claims may proceed down both avenues. *Id.* at 106.

As for the first method, an official policy may be found where "a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (internal quotation marks and citation omitted). Custom, on the other hand, can be proven via a "given course of conduct that although not specifically endorsed or authorized by law, is so well-settled and permanent as to virtually constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 860 (3d Cir. 1990). Lawson does not claim the City has an official policy of allowing PPD to engage in deceptive investigation techniques. Instead, Lawson alleges it was the City's "standard operating procedure" to "maintain or indulge" seven PPD customs, including fabrication of inculpatory evidence, ignoring systemic misconduct, and failing to adequately train and supervise

officers.[6] *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (internal quotation marks and citation omitted); SAC ¶¶ 128-44. Customs need not be affirmative acts: "deliberate indifference, lack of compliance, and failure to adhere to . . . standards" may constitute custom. *A v. Nutter*, 737 F. Supp. 2d 341, 362 (E.D. Pa. 2010).

Custom must also be coupled with causation. A plaintiff must show that "policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury." *Bielevicz*, 915 F.2d at 851. Proximate cause may exist where the "occurrence of the specific violation was made reasonably probable by permitted continuation of the custom," or the municipality failed to act after being put on notice of a constitutional deficiency. *Id.* (internal quotation marks and citation omitted); *see also Brandon v. Holt*, 469 U.S. 464, 467 (1985) (recognizing the assumption that continued tolerance of reported constitutional deficiencies facilitates similar conduct in the future).

According to Lawson, the seven practices he describes were widespread within the PPD since as early as 1977. Pl.'s Mem. Opp'n Defs.' Mot. Dismiss 13, ECF No. 40-1. He contends the City was "fully aware" of these issues as a result of newspaper articles, government investigations, and prior litigation. SAC ¶ 133. Lawson thus plausibly alleges the City was on notice of the PPD's history of constitutional violations yet failed to act, and that this "permitted continuation" of these practices made his injury "reasonably probable." *Bielevicz*, 915 F.2d at 851. He further alleges the City's practice of permission was so widespread for so long that it could not be considered the result of "idiosyncratic actions of individual actors." *Burke v. Twp. of Cheltenham*, 742 F. Supp. 2d 660, 675 (E.D. Pa. 2010). The Court finds Lawson has alleged sufficient facts to plausibly show

---

[6] Using the word "custom" to describe the actions of the PPD is slightly misleading, as it is the custom of the City that is at issue here—whether it had the custom of allowing PPD to engage in these seven practices.

the existence of a City custom of allowing police misconduct, and the Second Amended Complaint adequately puts the City on notice as to the improper conduct of which they are accused. *See McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).

The City argues Lawson's claim must fail as the Second Amended Complaint fails to identify any specific policymaker responsible for the alleged custom. Defs.' Mem. Supp. Mot. Dismiss 14-15, ECF No. 35-1. Usually, when alleging a defendant's unconstitutional policy led to a plaintiff's injuries, a complaint must link the policy to a specific policymaker. *See Rees v. Office of Children & Youth*, 473 F. App'x 139, 144 (3d Cir. 2012). When proceeding on a theory of municipal custom, however, "the responsible decisionmaker [need not] be specifically identified." *Bielevicz*, 915 F.2d at 850. This is because a custom is so widespread and well-settled that it can fairly be ascribed to municipal decisionmakers generally. *Id.*; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 n.10 (1986). Because Lawson argues the City maintained an unconstitutional custom, as opposed to policy, he need not identify a specific policymaker responsible for the municipal's acts.

Lawson's claim may also proceed under the second theory of *Monell* liability, involving a "deliberate or conscious choice" by the City. *Forrest*, 930 F.3d at 105. Under this model, a plaintiff must show a municipality's failure to train, supervise, or discipline where: "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* at 106; *see also Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (finding deliberate indifference where the defendant "turned a blind eye to an obviously inadequate practice that was likely to result in the

violation of constitutional rights"). Liability will only attach, however, "where a deliberate choice to follow a course of action is made from among various alternatives." *Pembaur*, 475 U.S. at 483.

In *Forrest v. Parry*, the Third Circuit held the City of Camden's failure to train its supervising police officers amount to deliberate indifference under this three-prong test. 930 F.3d 93, 109 (3d Cir. 2019). Camden knew or should have known of the issues and that the wrong choice would lead to a deprivation of rights, due to the "sheer volume of complaints" in the past. *Id.* In addition, "although the situation d[id] not necessarily involve a difficult choice," there were facts suggesting a "history of mishandling the choice." *Id.* Similarly here, Lawson alleges the City of Philadelphia knew or should have known that officers were engaging in systemic misconduct, there was a history of wrongful investigations and prosecutions, and those issues were "frequently caus[ing] the deprivation of constitutional rights." *Id.* at 106. Lawson also plausibly alleges that the City consciously chose not to train PPD officers, and that this failure led to his injury. Under either the "policy/custom" or "deliberate indifference" theory, Lawson states a plausible claim for municipal liability under *Monell*. For those rights that were clearly established at the time of the alleged conduct, Lawson may pursue claims against the City as well as the individual Defendants.

In sum, while the Second Amended Complaint alleges sufficient facts to show the personal involvement of the individual officers in violating Lawson's constitutional rights, qualified immunity protects those Defendants from liability for malicious prosecution under the Fourteenth Amendment, as this right was not clearly established at the time. For the same reason, the City cannot be held liable for violating that right. However, the other claims against the City can proceed under a theory of municipal liability. Count I will proceed against the individual Defendants to the extent it relies on the Fourth Amendment; Counts II and III will proceed to the extent agreed upon by the parties; Count V will proceed against the City, save for any allegations

of a Fourteenth Amendment malicious prosecution claim; and Count VI will proceed against the

individual Defendants.

An appropriate Order follows.

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.