IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYREE LAWSON | : | CIVIL ACTION |
| | : | |
| v. | : | No. 20-4568 |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |

## MEMORANDUM

**Chief Judge Juan R. Sánchez**                                        **February 26, 2024**

Plaintiff Tyree Lawson brings this civil rights suit against three Philadelphia Police Department employees and the City of Philadelphia, alleging he was wrongfully convicted of a 2006 shooting in violation of his constitutional rights. Defendants move for summary judgment, arguing Lawson has adduced no affirmative evidence to prove any of his claims. Because Lawson has failed to demonstrate any fabrication, bribery, coercion, or other wrong occurred as the result of any action on the part of the Defendants, the Court will grant summary judgment.

## BACKGROUND

On July 11, 2006, a bullet shot through the door of 3926 Mount Vernon Street in Philadelphia, grazing the head of resident Rasahn Brown.[1] Philadelphia Police Department ("PPD") Officers James Mostiller and Dennis Slobodian responded, questioned Rasahn,[2] and transported him to the Children's Hospital of Philadelphia.[3] Rasahn told the responding officers he saw Plaintiff Tyree Lawson, with his brother Ameen Lawson, outside Rasahn's house before

---

[1] Defs.' Statement Undisputed Material Facts ("Defs.' Statement") ¶¶ 7-8, ECF No. 77-1.

[2] As the parties have done, the Court uses first names to refer to those individuals whose surnames are shared by another case participant. *See* Second Amended Complaint ("SAC") ¶ 20 n.1, ECF No. 28. Any standalone reference to "Lawson" refers to Plaintiff Tyree Lawson.

[3] *See* Mostiller and Slobodian's July 11, 2006 Complaint or Incident Report (form "75-48"), Ex. AA1, ECF No. 96-2.

the shooting.[4] Rasahn also said he saw them flee the area in a blue SUV with a red hood and top after the shooting.[5]

Detective Mary Kuchinsky interviewed Rasahn at the hospital.[6] Rasahn repeated he had seen Lawson and Ameen outside his house before the shooting.[7] The PPD also collected a statement from Naimah Freeman, Rasahn's sister, who was home on the night of the shooting.[8] Naimah told Detective Mullen she had not seen anyone.[9]

Lawson argues the incident report and Rasahn's statement are fabricated.[10] Lawson claims that at the time of the shooting, he was caring for his ailing sister, Squanetta Lawson, at her house almost eight miles away.[11] Nonetheless, Kuchinsky submitted an affidavit of probable cause for Lawson's arrest on July 19, 2006.[12] Lawson contends Kuchinsky's affidavit was also fabricated because it was based on the incident report and Rasahn's statement.[13] On April 17, 2008, Lawson was arrested in connection with Kuchinsky's affidavit.[14] Although the case was discharged for lack of prosecution, it was refiled on March 24, 2009, and Lawson was charged with attempted

---

[4] *Id.*

[5] *Id.*

[6] *See* July 11, 2006 Investigation Interview Record, Ex. G, ECF No. 96-1.

[7] *Id.*

[8] Defs.' Statement ¶ 10.

[9] *Id.* ¶ 10(iii)-(iv).

[10] Pl.'s Am. Resp. to Defs.' Statement ("Pl.'s Response") ¶¶ 9, 11, ECF No. 100.

[11] *Id.* ¶ 6.

[12] *See* Affidavit of Probable Cause, Ex. K, ECF No. 96-1.

[13] Pl.'s Response ¶ 12.

[14] Defs.' Statement ¶ 13.

murder, aggravated assault, criminal conspiracy to commit murder, and other firearms-related crimes.[15]

At trial on October 9, 2009, the Commonwealth called Rasahn, Naimah, and two of the individual defendants: Slobodian and Kuchinsky.[16] When the Commonwealth showed Rasahn the statement taken by Kuchinsky, Rasahn testified "I remember the statement but I don't remember giving it."[17] Lawson contends this quote is proof Rasahn did not give a statement to Kuchinsky.[18] Rasahn then proceeded to confirm most of the statement and verified he signed it voluntarily.[19] Lawson disputes Rasahn did so. He claims the trial transcript inaccurately rearranged and manipulated what Rasahn said.[20] Meanwhile, Naimah testified she had seen Ameen and Lawson, with a gun in his hand, outside of the residence on the night of July 11, 2006.[21] She also stated she and her brother Wendell had chased Lawson into the woods after the shooting, before Lawson fled in a car.[22] Lawson disputes Naimah's testimony and claims the Philadelphia District Attorney's Office ("DAO") bribed her for her testimony.[23]

---

[15] Ex. NN, ECF No. 96-2.

[16] *See* Ex. Q, ECF No. 96-1.

[17] Defs.' Statement ¶ 14(iii).

[18] Pl.'s Response ¶ 14.

[19] Defs.' Statement ¶ 14(iv)-(v).

[20] Pl.'s Response ¶ 14.

[21] *Id*. ¶ 14(vi)-(vii).

[22] *Id*.

[23] SAC ¶ 149, 157.

Lawson was convicted and sentenced to 14-to-28 years of incarceration.[24] His conviction and sentence were affirmed on appeal.[25] Lawson thereafter sought relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), alleging ineffective assistance of counsel and newly-discovered evidence.[26] At a hearing on Lawson's PCRA petition in 2018, Squanetta confirmed Lawson was with her at the time of the shooting, and Wendell contradicted Naimah's testimony that they ran after Lawson.[27] Squanetta further testified she reached out to the PPD many times while Lawson's charges were pending, but neither she nor Wendell were ever interviewed by the police.[28] The prosecution also called Naimah, who again stated she had seen Lawson and Ameen outside of the residence.[29] After the PCRA hearing, the Philadelphia County Court of Common Pleas vacated Lawson's conviction and ordered a new trial.[30] In response, the DAO nolle prossed his charges.[31]

Lawson filed this civil rights suit in the Philadelphia County Court of Common Pleas against three individual Defendants—Mostiller, Slobodian, and Kuchinsky—and the City of Philadelphia, alleging he was wrongfully convicted in violation of his constitutional rights. Defendants removed the case to federal court and filed a partial motion to dismiss. After the Court granted the motion in part and denied it in part, the following claims proceeded to discovery: (I) a Fourth Amendment malicious prosecution claim against the individual Defendants; (II) a deprivation of liberty without due process claim for fabricating evidence and bribing a witness

---

[24] Defs.' Statement ¶ 15.

[25] *See* Ex. L, ECF No. 77-2.

[26] Defs.' Statement ¶¶ 19-20.

[27] *See* Ex. E, ECF No. 96-1.

[28] *See id*.

[29] *See id*.

[30] Defs.' Statement ¶ 23.

[31] *Id*. ¶ 24. Lawson was sentenced for another crime in June of 2011. *Id*. ¶¶ 16-17.

against the individual Defendants; (III) a civil rights conspiracy claim against the individual Defendants; (V) a municipal liability claim against the City of Philadelphia; and (VI) a Pennsylvania state law malicious prosecution claim against the individual Defendants.[32] Defendants now move for summary judgment.

## STANDARD OF REVIEW

A court must grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[33] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[34] "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."[35] Only disputes as to material facts—i.e., those which "might affect the outcome of the suit under the governing law"—will preclude summary judgment.[36] When considering a motion for summary judgment, the court must "view all facts in the light most favorable to the non-moving party and draw all inferences in that party's favor."[37] Viewing the facts in this light, summary judgment must be denied if a reasonable jury could find for the nonmoving party.[38]

## DISCUSSION

---

[32] *See* ECF No. 44.

[33] Fed. R. Civ. P. 56(a).

[34] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[35] *Id*. at 247-48.

[36] *Id*. at 248.

[37] *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019).

[38] *Anderson*, 477 U.S. at 248.

Defendants move for summary judgment, arguing Lawson has not developed the necessary evidence to establish any of his claims.[39] All of Defendants' contentions ultimately flow from one fundamental argument: Lawson does not provide evidence demonstrating any fabrication, bribery, coercion, or other wrong occurred.[40]

All but one of Lawson's claims are brought under 42 U.S.C. § 1983. To plead a violation under § 1983, a plaintiff must demonstrate personal involvement in the alleged wrongs by each defendant.[41] The defendant's liability "cannot be predicated solely on the operation of *respondeat superior*."[42] Instead, "[a] plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct."[43] A court "can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case," but "the knowledge must be actual, not constructive."[44] A plaintiff must thus "portray specific conduct by state officials which violates some constitutional right."[45]

Demonstrating personal involvement is not all Lawson must do. To prevail on his § 1983 malicious prosecution claim, Lawson must also show:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice;

---

[39] Defs.' Mem. Law Supp. Mot. for Summ. J. 2-3, ECF No. 77.

[40] *Id*.

[41] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

[42] *Id*. (citations omitted).

[43] *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).

[44] *Id*.

[45] *Id*. (quoting *Gittlemacker v. Prasse*, 428 F.2d 1, 3 (3d Cir. 1970)).

and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.[46]

Similarly, his Pennsylvania state law malicious prosecution claim requires showing "(1) the institution of proceedings against the plaintiff without probable cause and with malice, and (2) the termination of proceedings in favor of the plaintiff."[47]

For his deprivation of liberty without due process claim for fabricating evidence and bribing a witness, Lawson must show "there is a reasonable likelihood that, without the use of [the fabricated evidence and bribery to induce fabricated witness testimony]," he would not have been convicted.[48] The Third Circuit has recognized "there is a notable bar for evidence to be considered 'fabricated.'"[49] "[T]estimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong."[50] Instead, a "fabrication-of-evidence claim requires persuasive evidence [the defendant] formulated or submitted false evidence willfully, knowingly, or with a reckless disregard for its truth."[51] The plaintiff must also demonstrate "that the allegedly fabricated evidence was so significant that it could have affected the outcome of the criminal case."[52]

Meanwhile, Lawson's civil rights conspiracy claim requires showing:

(1) two or more persons conspire[d] to deprive any person of [constitutional rights]; (2) one or more of the conspirators perform[ed] . . . any overt act in furtherance of the

---

[46] *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009) (citing *Est. of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

[47] *Alleyne v. Pirrone*, 180 A.3d 524, 540 (Pa. Commw. Ct. 2018) (citing *Turano v. Hunt*, 631 A.2d 822, 825 (Pa. Commw. Ct. 1993)).

[48] *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014)

[49] *Black v. Montgomery Cty.*, 835 F.3d 358, 372 (3d Cir. 2016).

[50] *Halsey*, 750 F.3d at 295.

[51] *Mervilus v. Union Cty.*, 73 F.4th 185, 194-95 (3d Cir. 2023).

[52] *Halsey*, 750 F.3d at 295.

7

conspiracy; and (3) that overt act injure[d] the plaintiff in his person or property or deprive[d] the plaintiff of any right or privilege of a citizen of the United States, with the added gloss under § 1983 that the conspirators act under the color of state law.[53]

And finally, under *Monell*, while a municipal entity cannot be held liable solely because it employs a tortfeasor, i.e. on a theory of respondeat superior, it can be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [an] injury"—that is, violates a constitutional right.[54]

Lawson alleges Mostiller and Slobodian personally (1) acted together with Detective Kuchinsky to fabricate Rasahn's witness statement and (2) fabricated the police incident report.[55] But Lawson has failed to provide the evidence necessary to demonstrate Mostiller and Slobodian's personal involvement in any alleged fabrication. First, Lawson claims Mostiller and Slobodian helped fabricate Rasahn's statement because "the misspelled [Rasahn] signature" forged in the statement "matches the [Rasahn] misspelling" contained in the incident report.[56] Lawson argues if the documents were not fabricated, Mostiller and Slobodian would have consulted "with Rashan, or *any* other residents of Rashan's home" to learn the correct spelling of his name: "Rashan."[57] In support, Lawson provides various records with the "Rashan" spelling, including Rasahn's hospital records, juvenile court records, and criminal history records.[58] But some of the records Lawson

---

[53] *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (internal quotation marks and citations omitted).

[54] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

[55] Pl.'s Opp'n to Summ. J. 54-56, ECF No. 100; SAC ¶¶ 44, 50.

[56] SAC ¶ 44; Ex. B ¶ 5, ECF No. 96-1.

[57] Pl.'s Opp'n to Summ. J. 3.

[58] *See* Exs. H, M, ECF No. 96-1; *see also* Ex. RR, ECF No. 96-2.

cites also use the "Rasahn" spelling.[59] Even more striking is Rasahn's testimony from Lawson's October 9, 2009 trial. When asked to spell his last name, Rasahn spelled his full name as "R-A-S-A-H-N, B-R-O-W-N"—confirming the very spelling Lawson asserts is wrong.[60]

But Lawson dismisses all evidence of the "Rasahn" spelling as "inaccurate, altered and misleading."[61] He particularly focuses on the "misleading" transcript of Rasahn's October 9, 2009 trial testimony, emphasizing he has challenged the transcript's validity since 2010.[62] Indeed, in July 2010, Lawson filed a "Motion to Amend Altered Transcripts" in the Philadelphia County Court of Common Pleas, wherein he alleged the 2009 trial transcript had been extensively and fraudulently altered.[63] But Lawson does not specify who is to blame for the alleged alterations,[64] and the original motion notably does not contest the portion of the transcript where Rasahn spells his name "R-A-S-A-H-N."[65] Further, the Court of Common Pleas never granted the motion, and the Superior Court of Pennsylvania denied the motion without prejudice.[66]

---

[59] *See, e.g.*, Ex. H at 117, 135 (hospital records with "Rasahn" spelling). The Court uses ECF page numbers here and where otherwise noted due to the lack of page numbers in certain exhibits.

[60] Ex. Q at 12:5-8.

[61] Pl.'s Response ¶ 14.

[62] *Id.*

[63] Ex. PP, ECF No. 99.

[64] This has been the case from 2010 through 2023. In the 2010 motion, Lawson alleges several changes in the transcript but does not mention who made them. *See id.* Here, Lawson vaguely throws blame at "the state," his prior counsel, and the DAO. Pl.'s Response ¶ 14. Lawson never explicitly blames any of the individual Defendants for the claimed alterations.

[65] *See* Ex. PP.

[66] Pl.'s Response ¶ 14 n.2; Ex. N at 184 (ECF page number), ECF No. 96-1. The Superior Court denied the motion without prejudice "to seek the relief requested in the motion in his appellate brief." Ex. N at 184 (ECF page number). It is unclear how Lawson continued challenging the transcript's validity following the Superior Court's order, although he states he sought relief "to no avail" because "no court entertained any of [Lawson's] objections or responded to them." Pl.'s Response ¶ 14 n.2; Ex. S at 23:21-24, ECF No. 96-1.

Because Lawson provides no evidence of the transcript being altered beyond his own conclusory allegations and previously denied motion, the Court concludes there is no genuine dispute as to the transcript's "Rasahn" spelling. No reasonable jury would read Rasahn's testimony in which he spells his name "R-A-S-A-H-N" and conclude his name is spelled differently. This is fatal to Lawson's claim that Mostiller and Slobodian helped fabricate Rasahn's statement, as it refutes—rather than supports—Lawson's argument. Lawson thus fails to show Mostiller and Slobodian formulated or submitted a false Rasahn witness statement willfully, knowingly, or with a reckless disregard for its truth.[67]

Lawson also argues Mostiller and Slobodian fabricated the incident report because it (1) incorrectly spells Rasahn's name; (2) erroneously describes Lawson and Ameen as brothers; and (3) includes false information on Lawson's Chevy Tahoe.[68] Lawson claims if Mostiller and Slobodian had "factually gained any information from Rasahn," they would have discovered: (1) the correct spelling; (2) Lawson and Ameen are actually cousins; and (3) Lawson's Chevy Tahoe had been totaled three months prior to the shooting.[69]

As discussed, there is no genuine spelling dispute—the incident report uses the "Rasahn" spelling confirmed by Rasahn himself. Similarly, the Court concludes the report's incorrect kinship description and reference to Lawson's SUV are not genuine disputes as is required at the summary judgment stage. Like his spelling argument, Lawson argues the incident report is fabricated merely because the kinship description and SUV description matching the description

---

[67] For the same reason, the Court finds Lawson's depiction of all other records containing the "Rasahn" spelling as additional examples of state fabrication and attempts to "coverup PPD malfeasance" similarly fails to raise a genuine factual dispute. *See, e.g.*, Pl.'s Response ¶ 14 (claiming "the state . . . at some unknown point" altered the spelling in Rasahn's juvenile records).

[68] Pl.'s Opp'n to Summ. J. 54.

[69] *Id*. (emphasis omitted); Pl.'s Response ¶ 9 n.1.

of his totaled Chevy Tahoe are incorrect, and thus "illogically falsified."[70] If the Court were to hold that either or both facts rise to the level of fabricated evidence solely because they were incorrectly reported, any police report with an incorrect or disputed fact could theoretically be considered fabricated. This "would undermine the 'unusual case' standard dictated by [Third Circuit] precedent, which directs concern to cases in which there is actual evidence of fabrication," and not simply "he said, she said" disputes.[71] Instead, Lawson must provide persuasive evidence Mostiller and Slobodian willfully, knowingly, or recklessly formulated or submitted a false incident report.[72] Lawson has not done so, and thus his claim that the incident report was fabricated also fails.[73]

Lawson also fails to demonstrate Kuchinsky's personal involvement in any alleged fabrication. Lawson alleges Kuchinsky personally (1) fabricated Rasahn's witness statement; (2) had knowledge of and concealed the fabricated incident report; and (3) fabricated the affidavit of

---

[70] Pl.'s Opp'n to Summ. J. 76; Pl.'s Response ¶ 9 n.1.

[71] *Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 70 (3d Cir. 2017).

[72] *See Mervilus*, 73 F.4th at 194-95.

[73] Lawson argues the kinship description is evidence of fabrication solely because such information is "common knowledge" which could have been learned by speaking with several witnesses on the night of the incident. Pl.'s Response ¶ 14(v)(d). But "testimony that is incorrect . . . should not be treated as fabricated merely because it turns out to have been wrong." *Halsey*, 750 F.3d at 295.

As for the SUV, Lawson claims the officers "likely inquired and discovered [Lawson] owned a Blue & Red Chevy Tahoe, and decided to place that vehicle" at the scene. Pl.'s Opp'n to Summ. J. 54 (emphasis omitted). He claims his Chevy Tahoe could not have been present on the night of the shooting because it was totaled three months earlier, and this discrepancy is "sufficient . . . to infer a consciousness of guilt." *Id.*; Pl.'s Response ¶ 9 n.1. Nothing in the record is cited to support these contentions beyond the reference to the SUV in the report. Lawson has provided no evidence his Chevy Tahoe was totaled before the shooting, and even if it was, there is no evidence the officers knew it. Instead, Lawson only alleges they "likely" inquired and discovered it. But Lawson's personal hypothesis of Mostiller and Slobodian's likely actions is not evidence from which a reasonable factfinder could conclude they fabricated evidence. And as discussed, the incident report cannot be deemed fabricated solely because the identification of the Chevy Tahoe fleeing the scene turned out to be wrong.

probable cause.[74] Lawson first contends Kuchinsky fabricated Rasahn's witness statement because Rasahn was never interviewed.[75] Lawson makes an array of arguments to support this claim, but none of them have any merit based on Rasahn's 2009 trial testimony. Rasahn confirmed under oath that he spoke with Philadelphia police detectives and recognized his prior statement.[76] When the Commonwealth asked where he recognized it from, Rasahn said "I don't know" before saying "I remember the statement but I don't remember giving it."[77] Still, Rasahn verified that each page of the three-page statement included his signature, and he voluntarily signed them—no force involved.[78]

The Commonwealth proceeded to read the entire statement to Rasahn and asked if he remembered "being asked any of [the statement's] questions by the detective, Mary Kuchinsky," and giving the answers in the statement.[79] Rasahn confirmed he remembered 13 questions and 12 answers out of the statement's 14 questions and 14 answers.[80] The one question and two answers

---

[74] Pl.'s Opp'n to Summ. J. 3-5, 17.

[75] *Id*. at 3.

[76] Ex. Q at 14:18-21, 15:13-15.

[77] *Id*. at 15:16-25.

[78] *Id*. at 16:1-21, 24:5-7.

[79] *Id*. at 17:25-18:4.

[80] *Id*. at 18:6-22:15.

Rasahn did not confirm are not disputed in this case.[81] Ultimately, nowhere in Rasahn's testimony does he suggest Kuchinsky fabricated his statement.[82]

Lawson urges the Court to construe Rasahn's trial testimony as evidence of fabrication. Lawson believes Rasahn clearly testified he did not make the statement when he answered, "I remember the statement but I don't remember giving it."[83] Insofar as Rasahn goes on to confirm most of his statement's contents, Lawson counters the transcript "omit[s] Rashan's adamant testimony of never making the statement . . . [a]nd his testimony was in fact rearranged to reflect him miraculously remembering being asked each question within the very document he did not remember making."[84] Again, Lawson provides no evidence of the transcript being extensively altered in this way beyond his own conclusory allegations and previously denied motion.[85]

More critically, the Court concludes a reasonable jury would not interpret Rasahn's testimony to mean he did not give a statement to the PPD. Lawson selectively emphasizes only

[81] The only answer Rasahn did not remember giving does not involve Lawson at all—it concerns Ameen calling Rasahn's house and telling Rasahn he was a "dead man walking." *Id.* at 18:6-15. Lawson has never contested this testimony. *See* SAC ¶ 27; *see also* Pl.'s Response ¶ 6. As to the very last question and answer in Rasahn's statement, Rasahn did not affirmatively testify he did not remember them—rather, the Commonwealth did not ask if he remembered them. *See* Ex. Q at 22:11-15. Further, Lawson himself confirms Rasahn's answer—"Ameen and Tyree are cousins not brothers"—is correct. *See* Pl.'s Response ¶ 14(v)(d).

[82] Even Lawson admits Rasahn's testimony does not explicitly state his statement to Kuchinsky was fabricated. Ex. S at 48:17-23.

[83] Pl.'s Opp'n to Summ. J. 48, 75.

[84] Pl.'s Response ¶ 14 (emphasis and quotation marks omitted). Lawson also writes his "best recollection does not recall Rashan responding Yes to any of the asked questions." Pl.'s Response ¶ 14(iv) (emphasis omitted). Lawson's "best recollection" is not a material fact.

[85] Lawson's original motion tellingly does not contest any portion of the transcript in which Rasahn states he gave a statement to Kuchinsky and confirms most of the statement's contents. *See* Ex. PP.

half of the Rasahn quote at issue, largely ignoring Rasahn said he *did* remember the statement.[86] While part of Rasahn's testimony may appear contradictory, when read as a whole, it is not. Indeed, Rasahn testified he remembered the statement he gave to Kuchinsky and *never* denied speaking with her.[87] Taking a single quote out of the entirety of Rasahn's trial testimony does not raise a genuine issue of material fact.

With Rasahn confirming he gave the statement to Kuchinsky, his other arguments fall apart. For example, Lawson stresses Rasahn's statement does not name the PPD officer who interviewed him,[88] but as noted, Rasahn himself confirmed he gave Kuchinsky the statement. Lawson also recounts his attempt to reveal the statement's author through Pennsylvania's Right-to-Know Law,[89] explaining a PPD Right-to-Know analyst concluded "no responsive records were found to exist."[90] Lawson argues because the Rasahn statement "does not exist in police files," it must have been fabricated.[91] Again, Lawson's hypothesis is not evidence, and there is no evidence to invalidate Rasahn's explicit testimony confirming he gave the statement to Kuchinsky. Lawson further claims Rasahn was never interviewed because Kuchinsky's 2007 Investigation Report left the "Interview Section" under Rasahn's name blank.[92] Lawson is correct the section is blank, but

---

[86] *See* Ex. Q at 15:19-25 ("*I remember the statement* but I don't remember giving it.") (emphasis added).

[87] On the contrary, Rasahn explicitly states no one forced him to give a statement to Kuchinsky. *Id*. at 24:5-7.

[88] Pl.'s Opp'n to Summ. J. 18.

[89] *See* Exs. UU, WW, XX, ECF No. 96-2.

[90] *See* Ex. YY, ECF No. 99. Lawson also received a letter from the DAO, which located "the same copy of the redacted interview record with no author listed." *See* Ex. YY2, ECF No. 106.

[91] Pl.'s Opp'n to Summ. J. 32.

[92] *Id*. at 78; Pl.'s Response ¶ 11; *see also* Ex. I, ECF No. 96-1.

again, this is not material given Rasahn himself confirmed in sworn testimony he was interviewed.[93] There is no evidence Kuchinsky fabricated Rasahn's statement.

Second, Lawson claims Kuchinsky had knowledge the incident report was fabricated but concealed it by "modifying" the incorrect facts in the affidavit of probable cause for Lawson's arrest.[94] He alleges Kuchinsky reviewed the report, discovered Mostiller and Slobodian fabricated it, "conducted a search" of Lawson's Chevy Tahoe, and discovered it had been totaled three months before the shooting.[95] Kuchinsky then allegedly suppressed the "illogical falsehood" of Lawson's SUV by not including the fact it had been totaled in his arrest affidavit.[96] These contentions are also entirely speculative and unsupported.[97] Moreover, Lawson has not shown Mostiller and Slobodian fabricated the incident report. He therefore cannot prove Kuchinsky had knowledge of such a fabrication.[98]

---

[93] Similarly, to the extent Lawson highlights other documents neglected to list Rasahn's statement, he has not provided persuasive evidence to show such omissions even suggest fabrication. *Compare* Pl.'s Opp'n to Summ. J. 17 (arguing Ex. L, dated 2008, is evidence of Rasahn's statement being fabricated because it does not list Rasahn) *with* Ex. K (affidavit for Lawson's arrest, dated 2006, discussing information from Rasahn's statement).

Lawson also argues the statement is fabricated because it uses the "Rasahn" spelling and because Kuchinsky supposedly testified she did not become involved in Lawson's case until July 18, 2006—making it impossible for her to interview Rasahn on July 11, 2006. Pl.'s Response ¶ 11; Pl.'s Opp'n to Summ. J. 48. Neither is a genuine dispute: "Rasahn" is the correct spelling, and Lawson simply asserts Kuchinsky's testimony regarding her July 18 assignment to the case was "removed from the state's trial record" without providing any evidence of such an alteration. Pl.'s Opp'n to Summ. J. 39 n.19; *see also* Ex. YY.

[94] Pl.'s Opp'n to Summ. J. 76-77; Ex. B ¶ 9.

[95] Pl.'s Opp'n to Summ. J. 76.

[96] *Id*. at 77 (emphasis omitted).

[97] At one point, Lawson softens his claim to say Kuchinsky "*possibly* discovered" his Chevy Tahoe was totaled. Pl.'s Response ¶ 12 (emphasis added).

[98] While unclear, Lawson seemingly argues the fabricated Rasahn statement is additional evidence the incident report was also fabricated. *See* Pl.'s Opp'n to Summ. J. 56. This argument fails because Lawson has not provided persuasive evidence that Rasahn's statement was fabricated.

Third, Lawson claims Kuchinsky fabricated the affidavit for Lawson's arrest by basing it on "information she knew was false."[99] This argument largely stems from his baseless belief that the incident report and Rasahn's statement were fabricated.[100] Because neither have been shown to be fabricated, Lawson's fabricated affidavit argument ultimately amounts to disagreement with the affidavit's allegations. Lawson takes issue with the affidavit alleging he ducked behind a car, alleging Rasahn saw Lawson outside his home and previously saw Lawson with a handgun, omitting the distance between the door and the car, and inaccurately describing the vicinity outside of Rasahn's home.[101] These alleged "problems" are really information Lawson claims is wrong. Even if the information is false, there is no evidence showing Kuchinsky had knowledge of its falsity. As discussed, incorrect or disputed testimony is not treated as fabricated simply because it is wrong.[102] Lawson is required to show Kuchinsky willfully, knowingly, or with reckless disregard for its truth submitted a false affidavit for his arrest.[103] He has not done so. His conclusory allegations that Kuchinsky knew the information was wrong are not enough to show she fabricated the affidavit for his arrest.[104]

---

[99] Pl.'s Opp'n to Summ. J. 60 (emphasis omitted).

[100] *See id*. at 60, 63 (arguing the "problem" with the affidavit, among other things, is Rasahn "never implicated [Lawson] in the shooting and . . . never made any statement to the police."). Similarly, Lawson claiming the affidavit "abandoned" Mostiller and Slobodian's theory that Rasahn saw Lawson fleeing after being shot, and maliciously reframed Rasahn to having seen Lawson ducking behind a car assumes Rasahn's statement was fabricated. *Id*. at 56; Pl.'s Response ¶ 12. But it makes sense Mostiller and Slobodian's initial incident report contains different information from Kuchinsky's subsequent affidavit: the latter incorporated information from Rasahn's statement, which Mostiller and Slobodian did not take. *See* Ex. AA, ECF No. 96-2; *see also* Ex. G.

[101] Pl.'s Opp'n to Summ. J. 60, 62-63.

[102] *Halsey*, 750 F.3d at 295.

[103] *Mervilus*, 73 F.4th at 194-95.

[104] Lawson also takes issue with the affidavit correcting the kinship relationship between him and Ameen, and its reference to Rasahn as the "Compl." because he believes it is an attempt to "conceal Police-defendants' manufactured Rasahn implications." Pl.'s Opp'n to Summ. J. 4 (emphasis

Lawson also asserts his rights to due process and a fair trial were violated by the individual Defendants' bribery and coercion of witnesses. Lawson fails to demonstrate any of the Defendants were personally involved in any of these alleged wrongs. For his bribery allegation, Lawson claims Rasahn's brother Wendell told him the DAO bribed Naimah for her testimony.[105] Tellingly, Wendell's affidavits and PCRA testimony make zero reference to any bribery.[106] Lawson nonetheless believes Wendell's PCRA testimony established Naimah was bribed and assumes someone omitted that part of Wendell's testimony from the record.[107] As with his previous claims, Lawson provides no evidence to support this one. Similarly, Lawson blindly asserts "Phila. agencies . . . manipulated . . . Rasahn's custody in the youth-service placement center" from August 2008 until 10 days after Lawson's trial.[108] Lawson not only neglects to specify which Defendants are to blame, but documents show Rasahn was judicially ordered to remain in his placement until he earned his GED, which he had not done as of the last record provided.[109] There is thus no

---

omitted). A fabrication claim requires evidence Kuchinsky formulated or submitted *false* evidence. *Mervilus*, 73 F.4th at 194-95. Lawson agrees the affidavit correctly describes his relationship with Ameen, meaning Kuchinsky could not have fabricated that fact. If Lawson means to argue the correction shows Kuchinsky knew the incident report was fabricated, that argument fails because he has not shown it was fabricated. Further, "Compl." is short for "Complainant," and the following 2007 Investigation Report clearly lists Rasahn as the "Victim/Complainant." *See* Ex. I.

[105] Ex. S at 32:11-33:23; SAC ¶ 149, 157. In his opposition, Lawson also seemingly suggests the PPD fabricated Naimah's statement because Naimah never saw Lawson with a gun. Pl.'s Response ¶ 10(vi)-(viii). This argument fails because it is solely based on his disagreement with Naimah's statement. *See Halsey*, 750 F.3d at 295 ("[T]estimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong."). Lawson also seems to question the legitimacy of Naimah's statement, noting its "Nainah" misspelling, but his deposition clarifies he is not claiming Naimah was bribed to make her statement. *See* Pl.'s Opp'n to Summ. J. 10 n.6; *see also* Ex. S at 32:15-20.

[106] *See* Exs. C, D, E, ECF No. 96-1.

[107] Pl.'s Opp'n to Summ. J. 25.

[108] Pl.'s Response ¶ 14; Ex. B ¶ 42.

[109] *See* Ex. M at 176, 178 (ECF page numbers), ECF No. 96-1.

evidence demonstrating any of the Defendants had any personal involvement in any bribery or coercion.

As noted, Lawson cannot demonstrate Mostiller, Slobodian, or Kuchinsky were personally involved in any fabrication, bribery, coercion, or other wrong as required to sustain a claim under § 1983. Indeed, there is no evidence of anyone—including Rasahn—ever stating or even suggesting any of the individual Defendants fabricated or forced any statement.[110] Accordingly, Mostiller, Slobodian, and Kuchinsky are entitled to summary judgment as to all of Lawson's § 1983 claims against them, and judgment shall be entered in their favor as a matter of law on Counts I, II, and III.

The remaining claim against Mostiller, Slobodian, and Kuchinsky is the Pennsylvania state law malicious prosecution claim. Such a claim requires the plaintiff "to prove not only lack of probable cause, but the *existence of malice*."[111] Legal malice is "not limited to motives of hatred or ill will"—it "may consist of defendant's reckless and oppressive disregard of plaintiff's rights."[112]

Lawson argues Mostiller, Slobodian, and Kuchinsky acted maliciously by falsely identifying Lawson at the scene of the shooting and fabricating documents saying so, including Rasahn's statement.[113] But because Lawson has not demonstrated fabrication or Mostiller,

---

[110] Lawson claims Rasahn told Squanetta "the only reason" he went to court is because "police-detectives kept threatening to send [Rasahn] to prison 'if he did not come with them to the hearing.'" Ex. B ¶ 20 (emphasis omitted). Neither Squanetta's PCRA hearing testimony nor her affidavits mention any of the individual Defendants as the source of the threats. *See* Ex. E at 58:2-59:1 (Squanetta explaining Rasahn said "the court" and his "open case" forced him to attend); *see also* Ex. V, ECF No. 96-1; Ex. W, ECF No. 99.

[111] *Hugee v. Pennsylvania R. Co.*, 101 A.2d 740, 743 (1954) (citation omitted).

[112] *Id*. (citations omitted).

[113] Pl.'s Opp'n to Summ. J. 68-73.

Slobodian, and Kuchinsky's personal involvement in any alleged fabrication, he necessarily cannot prove the existence of malice in said fabrication.[114] Accordingly, Mostiller, Slobodian, and Kuchinsky are also entitled to summary judgment as to the malicious prosecution claim alleged in Count VI.

Finally, Lawson alleges the City of Philadelphia's failure to train, discipline, and supervise its PPD officers resulted in an atmosphere of widespread police misconduct which violated his constitutional rights.[115] Importantly, *Monell* requires the violation of a constitutional right by the municipal entity itself.[116] But Lawson has failed to demonstrate any alleged fabrication, bribery, coercion, or other wrong as the result of any action on the part of the individual Defendants or of any action caused by the execution of any policy, custom, or practice of the City of Philadelphia. Accordingly, his *Monell* claim fails. Summary judgment shall also be entered in favor of the City of Philadelphia, and Defendants' motion for summary judgment is granted in full.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.

---

[114] *See Hugee*, 101 A.2d at 743 (explaining malicious prosecution requires proving "not only lack of probable cause, but the *existence of malice*.").

[115] Pl.'s Opp'n to Summ. J. 51-53; SAC ¶¶ 176-83.

[116] *Monell*, 436 U.S. at 694.